J2REMY CHIASSON, Judge Pro Tern.
Plaintiff, Marlene Babin, appeals the trial court’s judgment dismissing her suit. The plaintiff was allegedly injured in a car collision on March 1, 1993. Plaintiff was on the down slope of an overpass on U.S. 90 when she encountered a stopped vehicle with its emergency flashers on. The car had been driven by defendant Raymond Lucas, who came to a stop in the left lane of traffic due to a breakdown. Babin safely stopped behind Lucas; however, her car was rear ended by a vehicle driven by Rose Autin. On July 8, 1993, plaintiff filed suit against Autin, Autin’s liability insurer International Indemnity, Lucas, and her own uninsured motorist carrier, Allstate Insurance Company. Plaintiff settled with Autin and her liability insurer before trial for policy limits of $10,000.00. A bench trial proceeded against Lucas and Allstate on November 9-10, 1994. The trial court issued a judgment finding that the proximate cause of the accident was Autin’s vehicle striking plaintiffs. The court dismissed plaintiffs suit against both defendants on January 18, 1995. Plaintiff moved for a new trial which was denied on March 21, 1995. Thereafter, plaintiff appealed | 3the judgment rendered on March 21,1995[1].
On appeal, the plaintiff argues that the trial court erred in the following respects: 1) the trial court erred in failing to include damages in its judgment to reasonably compensate plaintiff for her injuries; 2) the trial court made the legal and factual error of not finding defendant, Raymond Lucas, liable for causing the collision between plaintiff, Marlene Babin, and Rose Autin; and 3) the trial court made the factual and legal error of finding Rose Autin solely at fault for causing the collision between plaintiff and Rose Au-tin.
For the reasons below, we affirm the judgment of the trial court.
The testimonies of the various witnesses established that the accident occurred westbound on U.S. 90 between the Huey Long Bridge and Lapalco Blvd. Mr. Lucas’s vehicle broke down in the left lane of the down *1172 slope of an overpass (the cause of the breakdown was disputed, whether bad transmission or lack of gas). He testified that it came to a gradual stop, and that he could not steer it off the road because the steering became locked. He put on his emergency' flashers, which were described as “dim flashlights.” Plaintiff came over the overpass and realized that the Lucas vehicle was stopped. She tried to change to the right lane, but couldn’t due to other ears in that lane. She braked hard and was able to come to a full stop eight to ten feet behind Lucas’s car, making no impact with his vehicle. Plaintiff testified that almost immediately, she was rear ended by Rose Autin. (There was some dispute among the witnesses as to whether Babin was actually in the vehicle at the time of impact. The trial judge made no finding of fact on this point). Plaintiff testified that she felt pain and numbness all over her body, but pulled herself together to help Autin, who was clearly injured. Witnesses testified that Babin did not at any time activate her emergency flashers. A paramedic stopped at the scene and was in the process of checking Autin when they realized that her vehicle was about to be rear ended. Plaintiff was not inside her car during this second impact. Another 14witness at the scene assisted Lucas in deploying emergency flares at this time.
Pertinent to the trial court’s conclusion that Rose Autin was solely at fault for the accident, the record shows that Babin saw that Lucas’s vehicle was disabled, she saw his emergency flashers (despite their reported dimness), and she was able to stop behind him safely without hitting him. On appeal, she contends that Lucas violated LSA-R.S. 32:141[2] by stopping his car on the roadway.
However, that statute clearly exempts disabled vehicles from its provisions.
The trial court had the opportunity to see the witnesses and consider all the testimony and evidence. Our review of the entire record shows there is reasonable factual bases supporting the trial court’s conclusion that Autin was solely at fault in the accident. Therefore, we are bound by our appellate standard of review to affirm this finding of fact. Stobart v. State DOTD, 617 So.2d 880 (La.1993).
Because the trial court found that Lucas was not at fault in the accident, it was appropriate for it to dismiss plaintiff’s suit against him. The next assignment of error concerns the trial court’s dismissal of plaintiffs suit against her own UM carrier. The evidence in the record shows that plaintiff had suffered for a significant amount of time prior to this accident from two previously diagnosed, symptomatic ruptured cervical discs. Her treatment history was long, and showed that plaintiff had a number of incidents in the previous two years that caused her significant neck and back pain (a 1991 car accident, |5a July 1992 work injury, a November 1992 incident where she stopped her car suddenly and a January 1993 fall in the bathtub). Prior to the accident at issue in this case, plaintiffs doctor felt that she had reached a manageable level of pain only one week before, and had not scheduled another appointment for approximately two months. Additionally, the plaintiff was involved in another car accident in January 1994 for which she was still receiving treatment at the time of trial.
*1173 Apparently, the trial judge dismissed plaintiffs claim against her UM carrier because he found that she had been adequately compensated (i.e. was not underinsured) by Mrs. Autin’s insurance for this accident. Considering the evidence in the record regarding the numerous other possible causes of plaintiffs complaints, the trial judge was not clearly wrong. Thus, we affirm the judgment in favor of Allstate.
Accordingly, we affirm the district court’s judgment. All costs of this appeal are taxed to plaintiff/appellant.
AFFIRMED.

. Plaintiff's motion for appeal indicates she appeals the denial of her motion for new trial. However, her appeal brief clearly indicates that she appeals the judgment on the merits of her case rendered January 18, 1995.

. 141. Stopping, standing or parking outside business or residence districts
A.Upon any highway outside of a business or residence district, no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or main traveled part of the highway when it is practicable to stop, park or so leave such vehicle off such part of said highway, but in every event an unobstructed width of the highway opposite a standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicles shall be available from a distance of two hundred feet in each direction upon such highway.
B. The provisions of this Section shall not apply to the driver of any vehicle which is disabled while on the main traveled portion of a highway so that it is impossible to avoid stopping and temporarily leaving the vehicle in that position. However, the driver shall remove the vehicle as soon as possible, and until it is removed it is his responsibility to protect traffic.
C. The driver of any vehicle left parked, attended or unattended, on any highway, between sunset and sunrise, shall display appropriate signal lights thereon, sufficient to warn approaching traffic of its presence.